**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MICHAEL MOSS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-0225 |
| | § | |
| BMC SOFTWARE, INC., | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant, BMC Software, Inc.'s, motion for summary judgment. Dkt. 9. Upon consideration of the motion, the response, the reply, and the applicable law, the defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

In the summer of 2006, BMC posted a job opening for a Staff Legal Counsel on both its internal career site and external job websites. Dkt. 9, Ex. 6 at 5. BMC also engaged two contingency search firms to identify potential candidates. *Id.* The job posting indicated the need for an attorney with 5 or more years experience in a transactional IP practice with emphasis on OEM transactions as well as open source, alliance, and outsourcing agreements.[1] Dkt. 9, Ex. 1 at 20.

Plaintiff Michael Moss submitted his resume online for the position. Dkt. 13, Ex. 1 at 124. Catherine Stallworth, the BMC attorney responsible for hiring for the position, initially reviewed and rejected Moss's resume, determining that his experience did not appear to be the type desired for the position. *Id.* at Ex. 3 at 89. Because BMC had not contacted Moss, he sent a follow-up letter

---

[1] OEM is an acronym for Original Equipment Manufacture and refers to an agreement under which a party licenses software from another company and resells that software as its own or as part of a larger software product it owns or licenses. Dkt. 9, Ex. 3 at 2.

several weeks later to Denise Clolery, BMC's General Counsel, further detailing his experience and qualifications. *Id.* at Ex.1 at 142-44. Based on Moss's letter, Clolery felt that "his experience fit well with the position description." Dkt. 9, Ex. 2 at 2. She therefore forwarded Moss's resume to Stallworth for consideration as a possible candidate for the position. *Id.*

Along with other applicants, Stallworth received a resume from Monika Lim, the eventual successful candidate, from one of the recruiting firms associated with the search. *Id.* at ex. 6 at 6. Stallworth organized phone interviews with Moss, Lim, and several other individuals to determine if any of the potential candidates should be brought in for an interview. Dkt. 13, Ex. 3 at 128. When Stallworth initially interviewed Moss on the phone, she inquired into his experience with OEM transactions since his resume did not reflect any. *Id.* at 89. Moss indicated that he had previously participated in similar transactions, although they were not termed OEM transactions. *Id.* at 92.

After the initial phone screenings, Stallworth decided to bring both Moss and Lim into the office for interviews. *Id.* On October 10, 2006, both Moss and Lim interviewed with BMC's Chief Intellectual Property Counsel, Irene Kosturakis, Senior Legal Counsel, Chris Chaffin, as well as Clolery and Stallworth. Dkt. 9, Ex. 3 at 4.

During Lim's interview, "she expounded on her resume and described her current and prior dealings in relevant areas" of the software industry. *Id.* at 5. The interviewers determined that Lim "had handled several software OEM agreements, and spoke fluently to the complexities" of the industry. *Id.* Additionally, the interviewers learned that Lim had worked extensively with in-bound and out-bound software licensing and had previously participated in open source projects. *Id.*

Later the same day, the interviewers met with Moss. *Id.* at Ex. 6 at 7. During Moss's discussion with Clolery, Clolery inquired into Moss's practice history and experience. *Id.* at Ex. 2

at 3. According to Clolery, Moss primarily discussed his experience working on outsourcing transactions, explaining that his prior experience was focused on the corporate law aspects of such transactions as compared to the technical aspects of licensing and technology transfers. *Id.* Additionally, Clolery stated that Moss told her he had "never actually handled an OEM transaction" and "he was not familiar with 'open source' [issues]". *Id.* Clolery stated that at the conclusion of her interview with Moss she felt as if he had "little, if any, relevant experience in respect to the duties and responsibilities of the . . . position." Dkt. 9, Ex. 2 at 4. Additionally, Clolery explained that she was concerned about Moss's lack of prior in-house experience and felt that he did not understand BMC's needs or business. *Id.*

Moss disagrees and asserts that while he may have stated that the transactions in which he was previously involved may not have been titled OEM, he never told Clolery he did not have comparable experience. Dkt. 13, Ex. 1 at 191. Recalling his conversations with Clolery regarding open source software, Moss stated that, "[he] told her [he] knew what it was, but [he] had never done a deal that involved it." *Id.* at 186. Moss contends, however, that he made a point to tell Clolery that he was "intimately familiar with software licensing." Dkt. 9, Ex. 1 at 170. Moss argues that Clolery's questioning was an attempt to "find ways where she could demonstrate that there was some discernible space between what [he had] done and the specifics of this particular job. *Id.* at 192.

After Moss met with Clolery he met with Chaffin. Dkt. 13, Ex.1 at 201. Moss recalls little regarding his interview with Chaffin, other than the fact that "[they] went through the motions on this business of OEM specifically versus general stuff." *Id.* at 202. Moss characterizes the interview as getting "a little further . . . on the breadth of [his] experience and how [it] possibly could be of benefit to the organization." *Id.* However, Chaffin remembers that during the interview it became apparent that Moss had "practically zero relevant experience in the areas needed for the OEM

Attorney position." Dkt. 9, Ex. 4 at 2. Chaffin stated that "while Mr. Moss attempted to draw parallels in the absence of direct experience with OEM transactions, [Chaffin] did not feel that his alternative experiences were parallels at all." *Id.* Consequently, Chaffin concluded that Moss "would not be able to handle the duties and responsibilities of the OEM Attorney position." *Id.*

Additionally, Moss interviewed with Kosturakis. *Id.* at 213. All Moss could remember about the interview was that he and Kosturakis "briefly pursued an inquiry on the topic of open source." Dkt. 13, Ex. 1 at 214. But, Kosturakis recalls that when she asked Moss about open source, Moss "respon[ded] that he did not know what open source was." Dkt. 9, Ex. 5 at 2. Moss disputes Kosturakis's recollection, stating that he at no time told Kosturakis that he knew nothing about open source. *Id.* at 215.

After the conclusion of his interviews with Clolery, Chaffin, and Kosturakis, Moss met with Stallworth. Ex. 13, Ex. 3 at 130. Due to the fact that the other interviews had run longer than their allotted time, Stallworth only met with Moss for a brief period. *Id.* Stallworth stated that upon sitting down with Moss she observed that he seemed upset. *Id.* Stallworth contends that when she inquired as to why he was unhappy, Moss asserted that "he didn't think [Clolery] was happy with him because . . . [he didn't] have any OEM experience." *Id.* at 130-31. Stallworth reported being surprised and confused by Moss's comment. *Id.* at 131. Moss denies making such a statement and contends that he merely told Stallworth that he "didn't think Clolery had gotten a very good picture" of his capabilities. Dkt. 13, Ex. 1 at 205.

After interviewing Lim and Moss, Clolery, Chaffin, Kosturakis and Stallworth met to discuss their impressions of the candidates. Dkt. 13, Ex. 3 at 131. BMC contends that the overall consensus of the team was that while Moss was "a smart, experienced lawyer . . . he would be unable to successfully assume the responsibilities of the position and hit the ground running if he were offered

the job." Dkt. 9, Ex. 6 at 8. Because Lim was currently doing a "great deal of what the BMC OEM attorney position required," the group made the unanimous decision that Lim was the best candidate and would be offered the position. *Id.*

On November 13, 2006, BMC sent an email to Moss informing him that the company had "decided to pursue other candidates who are more qualified for [the] position." Dkt. 9, Ex. 6 at 20. Moss then called Eric Doucet, a BMC Human Resources manager, to inquire why BMC had not offered Moss the position. Dkt. 13, Ex. 1 at 152. Doucet told Moss that BMC had opted to hire someone with more specific relevant experience and an in-house counsel background. Dkt. 9, Ex. 6 at 25. Moss expressed surprise that someone was more qualified than he. *Id.*

On February 2, 2007, legal counsel for Moss sent a letter to Clolery stating that they were investigating potential employment claims against BMC. Dkt. 9, Ex. 6 at 22. The letter requested that BMC employees be made available for pre-suit depositions and that the name, resume, and job description of the hired attorney be submitted for examination. *Id.* In its response letter, BMC provided the latter information, but declined to comply with the request for employees to be deposed. *Id.* at 25. After continued unsuccessful communications, Moss raised an allegation of age discrimination in violation of the ADEA to the Equal Employment Opportunity Commission ("EEOC") alleging that he was not selected by BMC because of his age. Dkt. 9, Ex. 6 at 11. BMC responded to the EEOC complaint shortly thereafter and denied any discriminatory behavior. Dkt. 9, Ex. 6 at 2. In October 2007, the EEOC issued a Notice of Right to Sue letter entitling Moss to bring suit in this matter. Dkt. 1 at 3. Consequently, Moss filed this cause of action in this court in early 2008. *Id.* at 1. BMC now moves the court for summary judgement on Moss's claims. Dkt. 9.

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

A timely motion for summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of demonstrating that there is no genuine issue of material fact on which a case could be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

Once the moving party has discharged this initial burden, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48. Only disputed facts that might affect the outcome of the suit under the controlling law will properly prohibit the entry of summary judgment. *Id.* at 248.

On summary judgment the inferences to be drawn from the underlying facts contained in the record must be viewed in the light most favorable to the non-moving party. *United States v. Diebold*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962). To withstand an employer's motion for summary judgment on an ADEA claim, the plaintiff must present evidence, either circumstantial or direct, which suffices to create a genuine issue of face that he was discriminated against, on the basis of age, by an employer. *See Evans v. City of Bishop*, F.3d 586, 590–92 (5th Cir. 2000). A non-movant's

reliance upon "conclusory allegations, improbable inferences, and unsupported speculation," is insufficient to defeat a motion for summary judgment. *Hockman v. Westward Commc'ns*, 407 F.3d 317, 332 (5th Cir. 2004). Furthermore, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which he bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 323.

**B. Age Discrimination Standard**

The ADEA promotes employment of older persons based on their ability rather than age and prohibits arbitrary age discrimination in employment. 29 U.S.C. § 621(b). "In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence, or both." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). Where a plaintiff produces direct evidence of discrimination, the burden of persuasion is shifted to the defendant to show that the adverse hiring decision would have been made regardless of discriminatory animus. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 259, 109 S. Ct. 1775 (1989); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).

In contrast, where a claim is presented only on the basis of circumstantial evidence, the court must apply the burden-shifting framework established in *McDonnell Douglas*. *See McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). While the *McDonnell Douglas* framework was originally applied to cases of race discrimination in hiring, it was later adopted to apply to disparate treatment claims brought under the ADEA. *Tyler v. Union Oil Co of Cal.*, 304 F. 3d 379, 395 (5th Cir. 2002). Under *McDonnell Douglas*, as adapted, the plaintiff must first make out a *prima facie* case of discriminatory treatment based on age, proving: (1) he was a member of the protected class; (2) he was qualified for the position sought; (3) he was not selected; and (4) one of

the following: (a) a candidate outside his protected class was hired, (b) someone younger was hired, or (c) he was otherwise not selected because of his age. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). If the plaintiff establishes the aforementioned elements, a rebuttable presumption that the defendant unlawfully discriminated against the plaintiff is created. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). To rebut the presumption of discrimination created by the plaintiff's *prima facie* case, the defendant must articulate a legitimate, nondiscriminatory reason for its decision not to hire the plaintiff. *Id.* If the defendant meets this burden of production, the inference of discrimination disappears and the plaintiff must then attempt to prove discrimination by offering evidence that the that the defendant's stated reason is not true, but is instead a pretext for discrimination. *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003). The plaintiff will only survive summary judgment by "producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation. *Sandstad*, 309 F.3d at 897.

## III. Analysis

BMC moves the court for summary judgment in this matter asserting that Moss cannot establish a *prima facie* case of age discrimination because he cannot show that he was qualified for the position. In the alternative, BMC argues that summary judgment is proper because Moss cannot show that BMC's legitimate non-discriminatory reason is pretextual.

### A. Moss's *Prima Facie* Case

The court finds that despite BMC's argument to the contrary, Moss presented sufficient evidence to establish a *prima facie* showing of discriminatory treatment based on age. BMC concedes that Moss, at age 68, was within the protected class, that he was not hired for the position, and that the person hired was younger than Moss. The disputed issue is whether Moss was qualified

for the position. In determining whether Moss was qualified for the position the court must consider the record in the light most favorable to Moss and accept his assertions as to his qualifications as true. *Anderson*, 477 U.S. at 250.

BMC's online job posting enumerated a list of education, training, and skill requirements for the Staff Legal Counsel position. Dkt. 9, Ex.1, ex. 1. Moss received a JD from an accredited law school and has the 5 or more years of transactional legal experience in the technology field as required for the position. The skill requirements for the position included advanced legal drafting and negotiating skills, especially in a IP licensing practice, advanced legal and non-legal communication skills and advanced team leadership and project management skills. *Id.* According to Moss, he not only has an extensive history as a draftsman and contract negotiator, but also has served as a mentor and team leader throughout his career. Dkt. 13, Ex. 1 at 65-85. Moreover, Moss's 14 years of experience at Gordon & Glickson, an IT law firm, likely gave him a conceptual understanding of the processes and problems that would be encountered in the BMC position. Considering the record as a whole, Moss was qualified for the Staff Legal Attorney position for the purposes of establishing a *prima facie* case of discrimination.

**B. Defendant's Legitimate, Nondiscriminatory Reason for Not Hiring Moss**

Since Moss has made a *prima facie* case of discrimination, the burden of production then shifts to the defendants to show a legitimate, nondiscriminatory reason for not hiring Moss. An employer's decision not to hire a candidate because the employer determined that the individual was not as qualified as the person selected is a legitimate, non-discriminatory reason for such decision. *EEOC v. Office of Cmty. Serv.*, 47 F.3d 1438, 1443 (5th Cir. 1995). In the case at bar, BMC asserts not only that Lim possessed the requisite skill and general experience for the position, but also her specific prior experience with OEM transactions and open source agreements made her better qualified for

the position than Moss. Dkt. 9, Ex. 3 at 5. BMC explained that at the time of the interview, Lim was performing "virtually all of the same transactions for which the OEM Attorney position would be responsible." *Id.* Moreover, BMC felt that Lim's prior hands-on IP experience and in-house perspective made her more qualified than Moss who lacked each of those qualities. BMC's contention that they did not hire Moss because Lim was better qualified for the position is a legitimate, non-discriminatory reason and meets BMC's burden of production.

**C. Pretext**

Where the defendant meets its burden of production, the presumption of discrimination created by the *prima facie* case disappears and the plaintiff must then "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089 (1981). Pretext can be established in any number of ways that show that the "proffered explanation is unworthy of credence." *Id.*

A court can infer pretext if it determines that the plaintiff was "clearly better qualified (as opposed to merely better or as qualified) than the employee[] who [was] selected." *Office of Cmty. Serv.*, 47 F.3d at 1444. To demonstrate that the employee who was selected is clearly better qualified than the defendant, the plaintiff must show that "disparities in curricula vitae are so apparent as to jump off the page and slap [the fact finder] in the face." *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993).

After conducting a side-by-side comparison of Moss and Lim's respective resumes, the court finds Moss's assertion that he was clearly more qualified than Lim unpersuasive. Both Moss and Lim have the requisite educational qualifications and length of experience necessary for the position. Dkt. 9, Ex. 1, ex. A, B. Moss asserts that he "has substantial experience whereas [Lim] only had a

portion of Moss's experience and had practiced law for approximately a quarter of the years Moss had been practicing". Dkt. 13 at 18. Moss's conclusion that his length of experience in itself makes him clearly more qualified for the position does not necessarily follow. "[G]reater experience alone will not suffice to raise a question of fact as to whether one person is more qualified than another." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996). Additionally, Moss contends that his wider breadth of experience better qualifies him for the position than Lim whose experience is more specified. This assertion too is unconvincing. Recent experience within areas deemed most relevant to the position is a legitimate basis for selecting one candidate over another. *Odom*, 3 F.3d at 846. At the time of BMC's hiring decision, Lim was handling software licensing and open source code legal issues. Dkt. 9, Ex. 3 at 4. Moss admits that he has had no experience with open source transactions. Dkt. 13, Ex. 1 at 208. Additionally, Lim's resume reflects that she also had experience with negotiating software licensing, managing alliance partner matters, and outsourcing in as an in-house attorney. *Id.* Moss's resume reflects that a majority of his relevant experience was in the context of outsourcing. Dkt. 9, Ex. 1, ex. A. While it appears that Moss's outsourcing experience was likely superior to Lim's, outsourcing was only one quality that BMC sought in its candidates.

Moss has failed to establish either directly or through inference that BMC intentionally refused to hire Moss because of his age. Thus, the record is insufficient to establish that Moss was clearly better qualified than Lim and does not suffice to present a jury question as to pretext.

____Additionally, Moss alleges that because he was not afforded an in-person interview with Stallworth he was treated differently from Lim who was presented with such an opportunity. Dkt. 13 at 20. Moss asserts that this failure allowed more emphasis to be placed on Clolery's assessment of his qualifications, which Moss alleges was unfair as he contends that Clolery was not as qualified as Stallworth to make such an assessment. *Id.* The record simply does not support this allegation.

The record indicates that Stallworth's in depth discussion with Moss during their phone interview and their brief discussion during Moss's in-person interview would have afforded Stallworth ample opportunity to assess Moss's abilities. Moreover, the hiring decision was made only after the panel of interviewers discussed the potential candidates and came to a unanimous decision as to which candidate was best suited for the position. Dkt. 9, Ex. 3 at 5. Once again, Moss's speculative assertions miss the mark and fail to demonstrate that BMC's asserted legitimate, nondiscriminatory reason for its hiring decision was pretextual.

**D. Direct Evidence**

In the alternative, Moss argues that regardless of whether BMC's legitimate, nondiscriminatory reason for its hiring decision was pretextual or not, that Moss's direct evidence of discrimination suffices to defeat defendant's motion for summary judgment. Moss alleges that Stallworth's statement that she was seeking a "more junior" level attorney than herself is direct evidence of discrimination. This court disagrees, finding that Stallworth's comment was nothing more than a stray remark.

"In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, [as to allow] a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision" not to hire. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). Stray remarks are simply insufficient to establish age discrimination. *Id.* Stallworth's statement is neither direct nor unambiguous. Stallworth's comment tends to suggest that she was looking for an attorney with less experience than herself, someone who would serve a subordinate role in the company. Stallworth's statement is consistent with everything in the record about the position itself, the proposed salary, and the hierarchy of the legal department. Determining that this statement was age related would require

improper inferences and presumptions which the law simply does not tolerate. Therefore, Moss's attempt to establish direct evidence of age discrimination fails on this ground.

As Moss has neither demonstrated pretext under the *McDonnell Douglas* framework nor proffered any direct evidence of age discrimination, defendant's motion for summary judgment is GRANTED as to Moss's claims for age discrimination under the ADEA.

**E. Defendant's Request for Payment of Attorney's Fees**

BMC argues that it is entitled to attorney's fees on the ground that Moss's lawsuit is frivolous and was brought in bad faith. The court disagrees. The ADEA only explicitly provides for the recovery of attorney's fees for the prevailing plaintiff. *See* 29 U.S.C. § 626. However, courts considering the issue have found that a district court may award attorney's fees to a prevailing defendant if the defendant establishes that the plaintiff litigated "with recklessness, bad faith or improper motive." *Hogue v. Royce City*, 939 F.2d 1249, 1256 (5th Cir. 1991). BMC's contention that Moss's suit is groundless because Moss knew of BMC's reasons for not hiring Moss is unpersuasive. While Moss's allegations fail to establish the requirements for an age discrimination case as a matter of law, it appears from the record that Moss truly believes that he was the victim of discrimination. There is no indication that this claim was brought for any impermissible reason. Therefore, the court declines to assess defendant's attorney's fees to Moss, and BMC's motion is DENIED in that regard.

## IV. CONCLUSION

Pending before this court is defendant's motion for summary judgment. For the foregoing reasons, the motion is GRANTED IN PART and DENIED IN PART.

It is so ORDERED.

Signed at Houston, Texas on June 25, 2009.

Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY